**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GREGORY T. ANGELO, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**DISTRICT OF COLUMBIA, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 1:22-cv-01878-RDM** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DISTRICT DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 1

I. Relevant Facts ........................................................................................................ 1

II. Procedural History ........................................................................................................ 3

LEGAL STANDARD ........................................................................................................ 3

I. Rule 12(b)(1) ........................................................................................................ 3

II. Rule 12(b)(6) ........................................................................................................ 4

ARGUMENT ........................................................................................................ 4

I. Plaintiffs Still Lack Standing. ........................................................................................................ 4

A. Plaintiffs Lack Standing to Seek Prospective Relief ........................................ 5

B. Plaintiffs Lack Standing to Seek Damages ........................................ 9

II. Plaintiffs' Claims Against the Individual Defendants Fail as a Matter of Law. ............ 11

A. Plaintiffs Fail to State Claims Against Attorney General Schwalb and Chief Contee in Their Individual Capacities. ........................................ 11

B. Plaintiffs' Official-Capacity Claims Against Attorney General Schwalb and Chief Contee Are Duplicative. ........................................ 14

CONCLUSION ........................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Angelo v. District of Columbia*,
2022 WL 17974434 & n.3 (D.D.C. Dec. 28, 2022) ........ Passim

*Archdiocese of Washington v. WMATA*,
897 F.3d 314 (D.C. Cir. 2018) ........ 2

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ........ 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4, 11

*Attias v. Carefirst, Inc.*,
865 F.3d 620 (D.C. Cir. 2017) ........ 9

*Austin v. United States*,
847 A.2d 391 (D.C. 2004) ........ 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 7, 8

*Dearth v. Holder*,
641 F.3d 499 (D.C. Cir. 2011) ........ 5

*Dellums v. Powell*,
660 F.2d 802 (D.C. Cir. 1981) ........ 12

*District of Columbia v. Heller*,
544 U.S. 570 (2008) ........ 13

*District of Columbia v. Wesby*,
138 S. Ct. 577 (2018) ........ 13

*Ellis v. Comm'r, IRS*,
67 F. Supp. 3d 325 (D.D.C. 2014) ........ 10

*Estate of Boyland v. USDA*,
913 F.3d 117 (D.C. Cir. 2019) ........ 4

*Food & Water Watch, Inc. v. Vilsack*,
808 F.3d 905 (D.C. Cir. 2015) ........ 9

*Green v. Dep't of Just.*,
54 F.4th 738 (D.C. Cir. 2022) ........ 5

*Grocery Mfrs. Ass'n v. EPA*,
693 F.3d 169 (D.C. Cir. 2012) ........ 10

*Hemp Indus. Ass'n Botanicals, Inc. v. DEA*,
36 F.4th 278 (D.C. Cir. 2022) ........ 8

*Heuer v. Smithsonian Inst.*,
2022 WL 3026999 (D.D.C. Aug. 1, 2022) ........ 10

*Imbler v. Pachtman*,
424 U.S. 409 (1976) ........ 12

*In re Sci. App. Int'l Corp. Backup Tape Data Theft Lit.*,
45 F. Supp. 3d 14 (D.D.C. 2014) ........ 10

*Int'l Action Ctr. v. United States*,
365 F.3d 20 (D.C. Cir. 2004)........................................................................................ 11
*Jeffries v. District of Columbia*,
917 F. Supp. 2d 10 (D.D.C. 2013)................................................................................. 12
*Jibril v. Mayorkas*,
20 F.4th 804 (D.C. Cir. 2021)........................................................................................ 4
*Kentucky v. Graham*,
473 U.S. 159 (1985) ...................................................................................................... 14
*Khadr v. United States*,
529 F.3d 1112 (D.C. Cir. 2008)...................................................................................... 4
*Lewis v. D.C. Gov't*,
161 F. Supp. 3d 15 (D.D.C. 2015) ................................................................................. 12
*Lopez v. District of Columbia*,
268 F. Supp. 3d 256 (D.D.C. 2017)............................................................................... 14
*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ................................................................................................ 4, 10
*Monell v. N.Y. City Dep't of Social Servs.*,
426 U.S. 658 (1978) ...................................................................................................... 14
*Nat'l Family Planning and Reproductive Health Ass'n, Inc. v. Gonzales*,
468 F.3d 826 (D.C. Cir. 2006)....................................................................................... 10
*Nat'l Rifle Ass'n v. Magaw*,
132 F.3d 272 (6th Cir. 1997) .......................................................................................... 8
*Navegar, Inc. v. United States*,
103 F.3d 994 (D.C. Cir. 1997)......................................................................................... 5
*Navegar, Inc. v. United States*,
914 F. Supp. 632 (D.D.C. 1996).................................................................................... 10
*Ord v. District of Columbia*,
587 F.3d 1136 (D.C. Cir. 2009)...................................................................................... 6
*Parker v. District of Columbia*,
478 F.3d 370 (D.C. Cir. 2007)......................................................................................... 6
*Passut v. Cardona*,
540 F. Supp. 3d 27 (D.D.C. 2021)................................................................................. 10
*Patterson v. United States*,
999 F. Supp. 2d 300 (D.D.C. 2013)............................................................................... 13
*Price v. District of Columbia*,
545 F. Supp. 2d 89 (D.D.C. 2008)................................................................................. 14
*Proctor v. District of Columbia*,
2018 WL 6181739 (D.D.C. Nov. 27, 2018) .................................................................. 12
*Rasul v. Bush*,
542 U.S. 466 (2004) ........................................................................................................ 3
*Rizzo v. Goode*,
423 U.S. 362 (1976) ...................................................................................................... 11
*Seegars v. Gonzales*,
396 F.3d 1248 (D.C. Cir. 2005).......................................................................... 5, 6, 7, 8
*Smith v. District of Columbia*,
149 F. Supp. 3d 128 (D.D.C. 2015)............................................................................... 14

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 5, 7
*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021).......... 4
*United States v. Class*,
930 F.3d 460 (D.C. Cir. 2019).......... 13
*White v. Pauly*,
530 U.S. 73 (2017) .......... 13
*Woodhull Freedom Found. v. United States*,
948 F.3d 363 (D.C. Cir. 2020).......... 5, 9

**Statutes**

D.C. Code § 7-2509.07(a).......... 1, 2
D.C. Code § 7-2509.07(a)(6) .......... 1, 9
D.C. Code § 50-921.01 .......... 2
D.C. Code § 22-4504.01(4).......... 1, 10

**Rules**

Fed. R. Civ. P. 12(h)(3).......... 4
Fed. R. Civ. P. 12(b)(6).......... 4

## INTRODUCTION

Plaintiffs Gregory T. Angelo, Tyler Yzaguirre, Robert M. Miller, and Cameron M. Erickson bring a pre-enforcement challenge to the constitutionality of D.C. Code § 7-2509.07(a)(6). Am. Compl. [34] ¶ 40. Plaintiffs, however, still have not plausibly alleged that they face an imminent, credible risk of prosecution under this statute or that they have suffered economic injuries traceable to Defendants' conduct. Accordingly, Plaintiffs lack standing to bring their Second and Fifth Amendment Claims, and the Amended Complaint should be dismissed for want of jurisdiction. Even if the Court finds jurisdiction, Plaintiffs fail to plausibly state any claim against Defendants Attorney General Brian L. Schwalb and Chief Robert J. Contee III in either their individual or official capacities, so the Amended Complaint should, at minimum, be dismissed as to them.

## BACKGROUND

### I. Relevant Facts

District law prohibits licensed individuals from carrying concealed pistols in certain public spaces. D.C. Code § 7-2509.07(a). One such public space is public transportation: D.C. Code § 7-2509.07(a)(6) (the "Metro Law") provides that "[n]o person holding a license shall carry a pistol" in "[a] public transportation vehicle, including the Metrorail transit system and its stations." Public transportation includes "any publicly owned or operated commercial vehicle, including any DC Circulator bus, DC Streetcar, MetroAccess vehicle, Metrobus, or Metrorail train." *Id.* § 7-2509.07(g)(3). Registered firearms are permitted in these spaces only if they are unloaded and carried in a locked container, separate from any ammunition. *Id.* §§ 22-4504.01(4), 22-4504.02; *see also* Am. Compl. ¶ 51.

Two agencies—the District Department of Transportation (DDOT) and the Washington Metropolitan Area Transit Authority (WMATA)—operate public transportation throughout the District. DDOT is a part of the District's Executive Branch, D.C. Code § 50-921.01, and WMATA is a governmental unit created by a congressionally approved compact between Maryland, Virginia, and the District, *Archdiocese of Washington v. WMATA*, 897 F.3d 314, 318 (D.C. Cir. 2018) (citing Washington Area Transit Authority Compact, Pub. L. No. 89-774, 80 Stat. 1324 (1966)). WMATA operates a system of buses and subways that run throughout the District and into Maryland and Virginia that is often referred to as the "Metro system." *See* Am. Compl. ¶ 3.

Plaintiffs are residents of the Washington, D.C.-metropolitan area who have licenses to carry concealed handguns, regularly carry them "for personal protection within the District," and use District public transportation. *Id.* ¶¶ 3, 10, 16, 27. Each Plaintiff alleges that he is aware of instances of violence in the Metro system and is concerned for his safety while riding Metro. *Id.* ¶¶ 4, 11, 17, 28. Angelo further alleges that he once witnessed an assault on public transportation. *Id.* ¶ 4. Each Plaintiff alleges that he has expended greater sums of money taking alternative transportation (*e.g.*, Uber, taxis, etc.), presumably where he may carry a concealed and loaded pistol, rather than riding District public transportation. *Id.* ¶¶ 6, 8, 12, 14, 20, 23, 28, 31. Further, Miller alleges that he has expended greater sums for transportation in his personal vehicle, including gasoline, mileage, tolls, and parking expenses. *Id.* ¶ 20. If permitted by law, each Plaintiff would carry his firearm loaded and on his person while using the Metro system. *Id.* ¶¶ 7, 13, 21, 30.

On January 19, 2023, counsel for Plaintiffs emailed Attorney General Schwalb and Chief Contee a letter requesting a waiver of enforcement of the Metro Law with respect to Plaintiffs.

Am. Compl. ¶ 38. Plaintiffs mailed a similar letter to Defendant Metro Transit Police Chief Michael L. Anzallo on January 31, 2023. *Id.* ¶ 41. Defendants have not responded to Plaintiffs' letter. *Id.* ¶¶ 39, 41.

## II. <u>Procedural History</u>

Plaintiffs filed suit on June 30, 2022. *See* Compl. [1]. On July 11, Plaintiffs filed an application for a preliminary injunction [6], seeking to enjoin enforcement of the Metro Law. *See* Pls.' Mem. of Points and Authorities in Supp. of Appl. for Prelim. Inj. [6-1] at 12, 51. Plaintiffs also requested that the Court consolidate consideration of their application for a preliminary injunction with a trial on the merits and grant permanent relief under Rule 65(a)(2). *Id.* at 50–51. On December 12, the Court heard oral argument. On December 28, the Court issued a memorandum opinion and order [32] denying Plaintiffs' application and declining to consolidate the preliminary injunction motion with a trial on the merits. *Angelo v. District of Columbia*, 2022 WL 17974434 at *2 & n.3 (D.D.C. Dec. 28, 2022).

Pursuant to an agreed upon briefing schedule, Plaintiffs filed their First Amended Complaint [34] on February 1, 2023. In Count I, Plaintiffs allege that the Metro Law, "facially and as applied," violates the Second Amendment. Am. Compl. ¶¶ 130–32. In Count II, they allege that the Metro Law is "arbitrary and irrational" and thus violates the Due Process Clause of the Fifth Amendment. *Id.* ¶ 133.

# LEGAL STANDARD

## I. <u>Rule 12(b)(1)</u>

Because federal courts are courts of limited jurisdiction, the law presumes that "a cause lies outside this limited jurisdiction." *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (citation and quotations omitted). Thus, on a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of

demonstrating that the court's jurisdiction is proper by a preponderance of the evidence. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). This includes the threshold elements of Article III standing. *Estate of Boyland v. USDA*, 913 F.3d 117, 123 (D.C. Cir. 2019) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). If a court determines at "any time" that it lacks jurisdiction, the court "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## II. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In making this assessment, courts must accept *only* well-pleaded factual allegations; conclusory allegations and legal conclusions are not entitled to an assumption of veracity. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678–79.

# ARGUMENT

## I. Plaintiffs Still Lack Standing.

Plaintiffs have again failed to sufficiently allege Article III standing, and this Court therefore lacks jurisdiction. "[T]o establish standing, [Plaintiffs] must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by [Defendants]; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Plaintiffs "bear[] the burden of demonstrating Article III standing" as to "each claim that is being pressed and for each form of relief that is being sought." *Jibril v. Mayorkas*, 20 F.4th 804, 813 (D.C. Cir. 2021)

(citing *TransUnion LLC*, 141 S. Ct. at 2207–08). Plaintiffs here have not carried their burden as to any category of relief they seek—whether injunctive, declaratory, or monetary—and the Amended Complaint should therefore be dismissed in its entirety.

**A. <u>Plaintiffs Lack Standing to Seek Prospective Relief.</u>**

Plaintiffs have not plausibly alleged standing to seek prospective injunctive or declaratory relief. When seeking prospective relief, a plaintiff must show that he is "suffering an ongoing injury" and "faces an immediate threat of injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) (citations omitted). And to seek these remedies through a pre-enforcement challenge to a statute, the plaintiff must (1) allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and (2) demonstrate that "there exists a credible threat of prosecution thereunder." *Green v. Dep't of Just.*, 54 F.4th 738, 744 (D.C. Cir. 2022) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (*SBA*), internal quotation marks omitted). Here, even assuming Plaintiffs adequately allege an intention to engage in proscribed behavior, *see* Am. Compl ¶¶ 7, 13, 21, 30, they nevertheless fail to allege a credible threat of prosecution under the Metro Law. *See Angelo*, 2022 WL 17974434 at *8–*9, *10; *see also Woodhull Freedom Found. v. United States*, 948 F.3d 363, 370, 371 (D.C. Cir. 2020) (emphasizing that "[p]re-enforcement review" is unavailable unless "the threatened enforcement of law is sufficiently imminent").

As this Court explained, because this is a "non-First Amendment pre-enforcement challenge to a criminal statute," Plaintiffs must show that they face a "credible" *and* "imminent" threat of prosecution. *Angelo*, 2022 WL 17974434 at *4 (citing *Ord v. District of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009); *Seegars v. Gonzales*, 396 F.3d 1248, 1254 (D.C. Cir. 2005); *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997)). It is not enough for Plaintiffs to

point to a "background expectation that the government will enforce the law," or even to show that the District "enforces its gun laws, prosecuting all violators of the statute under normal prosecutorial standards." *Seegars*, 396 F.3d at 1253, 1255 (internal quotation marks omitted). Nor is it enough for Plaintiffs to assert "that (1) they wished to own prohibited firearms and (2) the District . . . had declared its intention to prosecute all violators." *Ord*, 587 F.3d at 1141 (citing *Parker v. District of Columbia*, 478 F.3d 370, 375 (D.C. Cir. 2007), *aff'd in part sub nom.*, *District of Columbia v. Heller*, 554 U.S. 570 (2008)). Plaintiffs must instead show that *they* have "been personally threatened with prosecution," *Seegars*, 396 F.3d at 1255, in the sense of being "singled out or uniquely targeted by the D.C. government for prosecution," *Parker*, 478 F.3d at 374–75. A mere "intention to violate the law" or "a general threat of prosecution" is "insufficiently imminent to support Article III standing." *Id.* at 374.

Plaintiffs still cannot clear this threshold jurisdictional test. Now, as before, "nowhere do Plaintiffs allege . . . that they 'have been singled out or uniquely targeted by the D.C. government for prosecution,' and they point to no 'prior threats against them' and to no 'characteristics indicating an especially high probability of enforcement against them.'" *Angelo*, 2022 WL 17974434, at *6 (quoting *Parker*, 478 F.3d at 375, and *Seegars*, 396 F.3d at 1255). Now, as before, this point is dispositive. *See id.* at *2. And nothing Plaintiffs have added to their Amended Complaint should change the Court's prior conclusion.

All that Plaintiffs have additionally alleged are more *general* threats of prosecution. They contend that WMATA is "known to take a zero tolerance approach to violations of the law observed by its officers." Am. Compl. ¶ 40. And they claim, on information and belief, that "MPD places a priority on enforcement of the city's firearm laws and has a policy to arrest for any violation of the District's firearm regulations." *Id.* ¶ 42. Such generalizations, however, are

legally immaterial because they do not show a threat of prosecution personalized to Plaintiffs. *See Seegars*, 396 F.3d at 1253, 1255 (holding that "imminence" was not established by alleging that the District prosecutes "'all violators of the statute under normal prosecutorial standards'" (quoting *Austin v. United States*, 847 A.2d 391, 393–94 (D.C. 2004))). And the same is true of Miller's allegation that he is purportedly "aware of instances when persons unlawfully carrying concealed weapons have been arrested and charged for violating the Metro Ban." Am. Compl. ¶ 18. That vague allegation does not indicate whether those prosecuted possessed concealed-carry licenses from the District, when the alleged prosecutions were, how many there were, or whether those other cases bear any resemblance to Miller's situation. *Cf. SBA*, 573 U.S. at 164–65 (finding "substantial" threat of future enforcement where plaintiffs-petitioners were the subject of a "recent" application of the challenged statute, had been threatened with the prospect of future enforcement, and supplied data concerning the number of complaints filed per year). Thus, Miller's general "aware[ness]" of past prosecutions does not begin to plausibly suggest that Plaintiffs "have been singled out or uniquely targeted by the D.C. government for prosecution" or that there is "an especially high probability of enforcement against them." *Angelo*, 2022 WL 17974434, at *6 (internal quotation marks omitted).

Plaintiffs also add allegations reinforcing their concerns about violence on the Metro system, Am. Compl. ¶¶ 4, 6, 11, 12, 17, 28, 29, the potential problems that "might" arise if they were *convicted* of a crime involving a firearm, *id.* ¶ 19, and a feeling of "chill" on their self-described Second Amendment rights, *id.* ¶¶ 33, 40, 42. Again, none of this shows a credible, imminent threat of prosecution. *Angelo*, 2022 WL 17974434, at *6; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013) (when statute "at most authorizes—but does not mandate or direct—the [injury] that [Plaintiffs] fear," the "allegations are necessarily conjectural"); *id.* at

418 ("[A]llegations of subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific harm."). Rather, these new allegations speak only to Plaintiff's reasons for wanting to engage in the prohibited conduct—they want immediate access to their weapons to alleviate anxieties over a violent confrontation and they want to avoid the consequences of hypothetical criminal convictions—not reasons to believe that any threat of prosecution under the Metro law is either credible or imminent.

Equally immaterial is Plaintiffs' discussion of their letters to the individual Defendants requesting a "waiver of enforcement" of the Metro Law or entry into a "non-prosecution agreement." Am. Compl. ¶¶ 34, 38–41. Plaintiffs cannot manufacture their own standing in this way. *See Clapper*, 568 U.S. at 416 (Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). And, in any event, Defendants' silence indicates only that the status quo has not changed: Plaintiffs still have the same general threat of prosecution under the Metro Law as every other similarly situated prospective Metro rider. That general threat of prosecution did not support standing when Plaintiffs first filed suit. Nor does it now. *Seegars*, 396 F.3d at 1253, 1255; *see also, e.g.*, *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 293–94 (6th Cir. 1997) (holding that "plaintiffs who telephoned BATF agents, submitted a hypothetical question, and received an answer that the questioned activity could subject them to federal prosecution does not confer standing").

Consequently, even with the benefit of an opportunity to replead, Plaintiffs' claims remain indistinguishable from those dismissed in *Parker*, *Seegars*, *Ord*, and many other cases. *See, e.g.*, *Hemp Indus. Ass'n Botanicals, Inc. v. DEA*, 36 F.4th 278, 291 (D.C. Cir. 2022) (finding plaintiffs lacked standing because "they fail to evince any credible or imminent threat that

[Defendant] will use its enforcement discretion against the Plaintiffs"); *Woodhull*, 948 F.3d at 371 (citing *Seegars* for proposition that "a plaintiff must still demonstrate more than a subjective chill to establish an injury-in-fact" (internal quotation marks omitted)). Because Plaintiffs have failed to allege an imminent threat of prosecution under D.C. Code § 7-2509.07(a)(6), they have failed to demonstrate standing to seek prospective relief, and the Court should dismiss their pre-enforcement challenge for lack of jurisdiction.

### B. Plaintiffs Lack Standing to Seek Damages.

Plaintiffs also lack standing to seek compensatory damages or any other backward-looking relief. As the Court noted previously, Plaintiffs' original complaint mentioned damages only in passing and did not allege any monetary loss. *Angelo*, 2022 WL 17974434 at *2 n.2. The Amended Complaint is styled "First Amended Complaint for Declaratory, Injunctive Relief and Damages," and it newly alleges that each Plaintiff was forced to "expend sums greater for transportation" than he would have on public transportation. Am. Compl. at 2; *id.* ¶¶ 6, 12, 20, 29, 37. But because Plaintiffs only contend that they chose to spend additional money based on speculative fears of prosecution, they have not shown injury-in-fact, much less that any supposed injuries were *caused* by the Metro Law.

#### 1. Costs Incurred by Plaintiffs Based on Speculative Fears of Prosecution Do Not Constitute Injury in Fact.

"[S]elf-imposed risk-mitigation costs, when 'incurred in response to a speculative threat,' do not fulfill the injury-in-fact requirement." *Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017) (quoting *Clapper*, 568 U.S. at 416–17)).[1] Here, as discussed in Section I, Plaintiffs

---

[1] *See also, e.g., Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) ("Plaintiffs here cannot establish standing by incurring costs that 'are simply the product of their fear[.]'" (quoting *Clapper*, 568 U.S. at 417)); *Nat'l Family Planning and Reproductive Health*

have failed to allege a credible, imminent, non-speculative threat of prosecution. So any costs they may have incurred to avoid that speculative threat are self-inflicted and insufficient to independently create standing. *Id.*; *Navegar, Inc. v. United States*, 914 F. Supp. 632, 637 (D.D.C. 1996) ("In the absence of a genuine threat of prosecution, [P]laintiffs' decision to incur financial losses will not automatically confer standing."), *aff'd in part*, 103 F.3d 994 (D.C. Cir. 1997). Accordingly, Plaintiffs lack standing to seek compensatory damages and any other corresponding relief.

**2. <u>Plaintiffs' Economic Injuries Were Not Caused by the Metro Law.</u>**

Plaintiffs also cannot establish causation. For standing, causation requires that the injury asserted be "fairly traceable" to the challenged conduct, *Lujan*, 504 U.S. at 560–61—here, the Metro Law's ban on carrying loaded firearms on public transportation. Plaintiffs say they expended "greater sums" on alternate transportation like taxis, Ubers, and the like; and Miller alone alleges that he paid more for gas and other expenses to drive his personal vehicle. Am. Compl. ¶ 37. But the Metro Law does not prevent Plaintiffs from using public transportation at all; it only prevents them from doing so with their firearms loaded and on their persons. *See* D.C. Code§ 22-4504.01(4); 22-4504.02; Am. Compl. ¶ 51. Thus, Plaintiffs' alleged choice to use more expensive transportation options is not an injury caused by the Metro Law. In other words, Plaintiffs chose those other options "voluntarily," and thus any cost "they incur[red] as a result is a self-inflicted harm not fairly traceable to the challenged government conduct." *Passut v. Cardona*, 540 F. Supp. 3d 27, 41 (D.D.C. 2021) (quoting *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 177 (D.C. Cir. 2012)); *see also Ellis v. Comm'r, IRS*, 67 F. Supp. 3d 325, 337 (D.D.C.

---

*Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (same); *Heuer v. Smithsonian Inst.*, Civil Action No. 17-0147, 2022 WL 3026999, *6 (D.D.C. Aug. 1, 2022) (same); *In re Sci. App. Int'l Corp. Backup Tape Data Theft Lit.*, 45 F. Supp. 3d 14, 26 (D.D.C. 2014) (same).

2014) ("[S]elf-inflicted injuries—injuries that are substantially caused by the [P]laintiff's own conduct—sever the causal nexus needed to establish standing." (citations omitted)). Because no economic injuries here are fairly traceable to the Metro Law, Plaintiffs lack standing to seek compensatory damages.

## II. Plaintiffs' Claims Against the Individual District Defendants Fail as a Matter of Law.

Even if Plaintiffs had standing, their claims against Defendants Attorney General Schwalb and Chief Contee (the Individual District Defendants) fail on the merits. The individual-capacity claims are deficient because Plaintiffs have not alleged that either Individual District Defendant was personally involved in or responsible for any alleged constitutional violation. And, in any event, both are entitled to immunity. The official-capacity claims likewise fail because they simply reiterate Plaintiffs' claims against the District.

### A. Plaintiffs Fail to State Claims Against Attorney General Schwalb and Chief Contee in Their Individual Capacities.

To state a constitutional claim against a municipal official in his individual capacity, a plaintiff must allege that the official was directly responsible for the alleged constitutional deprivation or that the official gave authorization for, or approval of, the alleged misconduct. *Int'l Action Ctr. v. United States*, 365 F.3d 20, 27 (D.C. Cir. 2004) (citing *Rizzo v. Goode*, 423 U.S. 362, 371, 375 (1976); *see Iqbal*, 556 U.S. at 676. Plaintiffs here do not even attempt to show that their pre-enforcement challenge to the Metro Law is actionable against the Individual District Defendants under this standard. Instead, Plaintiffs rely on the general—and unremarkable—allegations that Attorney General Schwalb is responsible for prosecuting violations of the Metro Law, Am. Compl. ¶ 33, and that Chief Contee is responsible for executing, administering, and enforcing the District's firearm laws, generally, *id.* ¶¶ 42–43. But

that is plainly insufficient. *See e.g.*, *Proctor v. District of Columbia*, 2018 WL 6181739, at *14–15 (D.D.C. Nov. 27, 2018) (dismissing individual capacity claim against deputy mayor because allegation that she "overs[aw] the operation of the [relevant] program and direct[ed] the adminstration of [the agency's] . . . policies and operations . . . fail[ed] to allege that [she] was personally involved in any alleged constitutional violation"); *Lewis v. D.C. Gov't*, 161 F. Supp. 3d 15, 37 (D.D.C. 2015) (dismissing individual capacity claim against Mayor where complaint alleged that Mayor promulgated executive policy permitting the plaintiff's termination but had no "personal role" in the employment decision); *Jeffries v. District of Columbia*, 917 F. Supp. 2d 10, 25–26 (D.D.C. 2013) (dismissing individual capacity claims against police chief where complaint "d[id] not show [her] *personal* involvement outside the mention of her official capacity as the Chief of Police who generally oversees all police activity" (internal quotation marks and citation omitted; emphasis in original)). This is true, moreover, even though Attorney General Schwalb and Chief Contee did not respond to Plaintiffs' request for an enforcement waiver, *see* Am. Compl. ¶¶ 34–39, because Plaintiffs do not—and cannot—contend that this discrete action somehow violated their constitutional rights. *See Jeffries*, *supra* (rejecting police chief's alleged "inaction" as conduct sufficient to establish personal liability where plaintiff failed to link the inaction to the alleged constitutional injury).

Nor can Plaintiffs' generic allegations surmount the immunity doctrines that protect government officials like the individual District Defendants. Two such doctrines clearly apply. *First*, Attorney General Schwalb is absolutely immune from suit to the extent Plaintiffs are seeking to hold him personally liable for any prosecution under the Metro Law. *See Dellums v. Powell*, 660 F.2d 802, 805 (D.C. Cir. 1981) ("[W]hen a prosecutor is engaged in 'initiating a prosecution,' his absolute immunity from civil suit is firmly established.'" (quoting *Imbler v.*

*Pachtman*, 424 U.S. 409, 431 (1976))). And that is particularly so considering there is no indication that the Metro Law has ever been enforced against concealed-carry license holders like Plaintiffs.

*Second*, qualified immunity bars Plaintiffs' suit against both the individual District Defendants. The doctrine of qualified immunity protects individual government officials from actions such as Plaintiffs' here so long as the officials' conduct was objectively reasonable in light of "clearly established" constitutional law. *See White v. Pauly*, 530 U.S. 73, 78–79 (2017). "Clearly established" law must be "settled," meaning "it is dictated by 'controlling authority' or a 'robust consensus . . . of persuasive authority.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011)). Of course, the District is aware of no controlling precedent clearly establishing that a law like the Metro Law runs afoul of the Second or Fifth Amendments. Neither the Supreme Court nor the D.C. Circuit has specifically weighed the constitutionality of a law restricting the concealed carry of loaded pistols on public transportation. *But see Heller*, 544 U.S. at 626–27 ("nothing in our opinion should be taken to cast doubt on longstanding prohibitions on . . . laws forbidding the carrying of firearms in sensitive places . . . ."); *United States v. Class*, 930 F.3d 460, 463–64 (D.C. Cir. 2019) (applying "sensitive places" doctrine). And if there is a broader consensus of relevant persuasive authority, it tends toward upholding the Metro Law as constitutional. *See generally*, Defs.' Opp'n to Pls.' Appl. for Prelim. Inj. [18] at 15–31. Because Plaintiffs have alleged no facts and cited no authority to establish otherwise, the Court should, at a minimum, dismiss the claims against Attorney General Schwalb and Chief Contee as barred by the doctrine of qualified immunity. *See Patterson v. United States*, 999 F. Supp. 2d 300, 311 (D.D.C. 2013) ("At the

motion to dismiss stage, a plaintiff must allege sufficient facts to establish that the defendants are *not* entitled to qualified immunity." (emphasis in original)).

### B. <u>Plaintiffs' Official-Capacity Claims Against Attorney General Schwalb and Chief Contee Are Duplicative.</u>

The Court should also dismiss Plaintiffs' official-capacity claims against Attorney General Schwalb and Chief Contee because those claims merely parrot the allegations Plaintiffs assert against the District of Columbia itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (rejecting "[o]fficial-capacity suits" that "'represent only another way of pleading an action against an entity of which an officer is an agent'" (quoting *Monell v. N.Y. City Dep't of Social Servs.*, 426 U.S. 658, 690 n.55 (1978))). Such improperly duplicative claims cannot support a viable official-capacity suit. *See Lopez v. District of Columbia*, 268 F. Supp. 3d 256, 260 (D.D.C. 2017) (dismissing official-capacity claims against District official as duplicative); *Smith v. District of Columbia*, 149 F. Supp. 3d 128, 132 (D.D.C. 2015) (same); *Price v. District of Columbia*, 545 F. Supp. 2d 89, 93 (D.D.C. 2008) (same).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss and dismiss Plaintiffs' First Amended Complaint for lack of jurisdiction.

Date: March 10, 2023.

Respectfully Submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Interim Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Helen M. Rave*
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
MATEYA B. KELLEY [888219451]
RICHARD P. SOBIECKI [500163]
HELEN M. RAVE [90003876]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 735-7520
Email: helen.rave@dc.gov

*Counsel for Defendants*