UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY T. ANGELO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br><br> Defendants. | Civil Action No. 1:22-cv-01878-RDM |

**REPLY IN FURTHER SUPPORT OF
DISTRICT DEFENDANTS' MOTION TO DISMISS**

As explained in the motion to dismiss filed by Defendants District of Columbia, Chief Robert J. Contee III, and Attorney General Brian Schwalb (the District Defendants) [44], under binding D.C. Circuit precedent, Plaintiffs have failed to establish their standing to bring a pre-enforcement challenge to the constitutionality of D.C. Code § 7-2509.07(a)(6). Plaintiffs' attempt to avoid that clear jurisdictional bar—by doubling down on the mere possibility of prosecution under the challenged provision and manufacturing self-inflicted economic injuries— should be rejected. Additionally, Plaintiffs' remaining claims against the individual District Defendants are duplicative and, at a minimum, those claims should be dismissed as to those Defendants.

**ARGUMENT**

**I.    Plaintiffs Lack Standing to Bring Any of Their Claims.**

"[T]o establish standing, [Plaintiffs] must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by [Defendants]; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*

*LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  Plaintiffs "bear[] the burden of demonstrating Article III standing" as to "each claim that is being pressed and for each form of relief that is being sought."  *Jibril v. Mayorkas*, 20 F.4th 804, 813 (D.C. Cir. 2021) (citing *TransUnion LLC*, 141 S. Ct. at 2207–08).  As explained in the District Defendants' motion to dismiss, Plaintiffs here have not carried their burden as to any category of relief they seek—whether injunctive, declaratory, or monetary—and the Amended Complaint should therefore be dismissed in its entirety.

### A.  Plaintiffs Lack Standing to Seek Prospective Relief.

To bring a pre-enforcement Second Amendment challenge, Plaintiffs must show that they face a "'credible'" and "'imminent'" threat of prosecution under the challenged provision.  *Angelo v. District of Columbia*, 2022 U.S. Dist. LEXIS 233906, at *13 (D.D.C. Dec. 28, 2022) (quoting *Ord v. District of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009)) [32].  The mere possibility of prosecution is not enough to establish Article III standing.  *See Parker v. District of Columbia*, 478 F.3d 370, 374 (D.C. Cir. 2007) ("[T]he District's general threat to prosecute violations of its gun laws did not constitute an Article III injury."), *aff'd in part sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008).  Plaintiffs must instead show "that they have been 'singled out or uniquely targeted by the government for prosecution.'"  *Ord*, 587 F.3d at 1140–41 (quoting *Parker*, 478 F.3d at 375 (alterations omitted)); *see Navegar, Inc. v. United States*, 103 F.3d 994, 1001 (D.C. Cir. 1997) (holding that plaintiffs lacked standing despite "the high-profile nature of their business," past "visits by the ATF agents," and a "letter from the ATF").

Plaintiffs in this case, therefore, cannot show a credible or imminent threat of enforcement simply because the District has not expressly disavowed prosecution.  *See* Pls.' Opp'n to Mot. to Dismiss (Pls.' Opp'n) [46] at 27–28.  Plaintiffs' contention that the Attorney

General did not affirmatively agree to refrain from enforcing the law against them at most suggests that the District has remained silent about the possibility of enforcement. But silence is not a "threat of prosecution" at all, much less a "credible" or "imminent" one. For this reason alone, Plaintiffs' lack Article III standing to seek prospective relief at this stage.

Contrary to Plaintiffs' assertions, moreover, no recent decision of the Supreme Court or D.C. Circuit has impliedly overruled the injury-in-fact principles recognized in *Navegar* and its progeny. *First*, none of the Supreme Court cases cited by Plaintiffs principally concerned Article III injury. *See, e.g.*, *FEC v. Cruz*, 142 S. Ct. 1638 (2022) (traceability); *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) (sovereign immunity); *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525 (2020) (mootness). And none of the D.C. Circuit decisions Plaintiffs cite involved a pre-enforcement challenge under the Second Amendment, *e.g.*, *Woodhull Freedom Foundation v. United States*, 948 F.3d 363 (D.C. Cir. 2020) (First Amendment), which places them squarely outside the *Navegar* line of cases, *see Seegars v. Gonzalez*, 396 F.3d 1248, 1254 (D.C. Cir. 2005). Therefore, none of the decisions cited by Plaintiffs can be viewed as intervening precedent on the question currently before this Court. *See, e.g.*, *Strange On Behalf of Strange v. Islamic Republic of Iran*, 964 F.3d 1190, 1198 (D.C. Cir. 2020) ("[W]e are not bound by a jurisdictional ruling that the High Court majority declined to hint at, even in passing."); *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 600 (D.C. Cir. 2015) ("We do not set jurisdictional precedents *sub silentio*.").

*Second*, to the extent those decisions suggest anything at all about Article III injury in pre-enforcement suits, they support the District's position, not Plaintiffs'. In those cases, the Court emphasized that it "has never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court," and that "the 'chilling effect' associated with a

potentially unconstitutional law being 'on the books' is insufficient to 'justify federal intervention' in a pre-enforcement suit." *Jackson*, 142 S. Ct. at 537–38 (quoting *Younger v. Harris*, 401 U.S. 37, 42, 50–51 (1971)); *see id.* at 539 (Thomas, J., concurring in part and dissenting in part) (same); *id.* at 549 n.3 (Sotomayor, J., concurring in the judgment in part and dissenting in part) (same). In other words, even when a law allegedly "'chills' the exercise of federal constitutional rights," Article III "has always required proof of a more concrete injury." *Id.* at 538 (majority op.). In particular, Plaintiffs must show "an injury resulting from the *application or threatened application* of an unlawful enactment" before Article III allows pre-enforcement challenges to that enactment. *Cruz*, 142 S. Ct. at 1647 (emphasis added). And this is true "whether the challenged law in question is said to chill the free exercise of religion, the freedom of speech, the right to bear arms, or any other right." *Jackson*, 142 S. Ct. at 538; *see id.* at 537 (holding that plaintiffs lacked standing to sue private individual who did not intend to sue them under the challenged law).

*Third*, none of Plaintiffs' cited authorities can be recast to support standing here. In *Cruz*, for example, the plaintiffs had "standing to challenge the *threatened enforcement* of" a statute, 142 S. Ct. at 1650 (emphasis added)—they were not (as Plaintiffs are here) complaining about the mere *existence* of a statute, *see* Pls.' Opp'n at 14. Likewise, *Woodhull* involved a statutory scheme that—unlike the Metro law—provided a civil cause of action to private parties and authorized criminal prosecutions by state authorities, which expanded "the universe of potential complainants" and thus "bolstered" the threat of enforcement. 948 F.3d at 373–74 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014)). Moreover, in *Jackson*, the plurality opinion noted that, while "it is not enough that petitioners feel inhibited or chilled by the abstract possibility of an enforcement action against them," the plaintiffs there had standing

4

to sue certain licensing officials because the challenged law had "already had a direct effect on their day-to-day operations," and because they "identified provisions of state law that appear to impose a duty on the licensing-official defendants to bring disciplinary actions against them." 142 S. Ct. at 535–37 (Gorsuch, J., plurality op.) (internal quotations and citations omitted).  None of that can be said in this case, and Plaintiffs have not plausibly alleged otherwise.

*Finally*, Plaintiffs' remaining theories also fail.  The D.C. Circuit has already rejected the notion (*see* Pls.' Opp'n at 36) that the absence of an administrative remedy requires the availability of pre-enforcement review or otherwise "render[s] a claim justiciable if the imminence of the threatened injury is inadequate." *Seegars*, 396 F.3d at 1256.  And the D.C. Circuit has also rejected the notion (*see* Pls.' Opp'n at 37-39) that the *Navegar* line of cases is so fatally inconsistent with Supreme Court precedent that courts can simply ignore it, as Plaintiffs would have this Court do.  *See Parker*, 478 F.3d at 375 ("[U]nless and until this court en banc overrules these recent precedents, we must be faithful to *Seegars* just as the majority in *Seegars* was faithful to *Navegar*." (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383 (1988); *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1972)).  Accordingly, Plaintiffs have failed to establish their standing under Article III to seek prospective remedies.

### B. Plaintiffs Lack Standing to Seek Damages.

Plaintiffs also lack standing to seek damages and other backward-looking relief.  The D.C. Circuit has "consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing." *Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006).  Indeed, self-inflicted harm "does not amount to an 'injury' cognizable under Article III," and even if it did, "it would not be fairly traceable to the defendant's challenged conduct." *Id.*; *see Petro-Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C. Cir.

5

1989) (R.B. Ginsburg, J.) (reasoning that an injury "so completely due to the complainant's own fault" will "break the causal chain" (internal quotation and alteration omitted)). These principles, too, follow from Supreme Court precedent. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."); *McConnell v. FEC*, 540 U.S. 93, 228 (2003) (holding that candidates lacked standing to challenge higher contribution limits because "[t]heir alleged inability to compete comes not from the operation of [the statute] but from their own personal 'wish' not to solicit or accept large contributions"), *overruled in part on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010).

      Plaintiffs in this case, then, cannot manufacture standing with the self-inflicted "injury" of choosing to pay for alternative transportation in order to carry firearms in the manner they prefer. As discussed, Plaintiffs have not shown an imminent threat of enforcement; they contend only that they incurred economic injuries based on their decisions about how to travel in the District. That is, rather than ride the Metro without their firearms or do so with their firearms in locked cases, Plaintiffs have purportedly chosen to take more expensive transportation options to carry a loaded firearm within the District of Columbia. But the Metro law, D.C. Code § 7-2509.07(a)(6), did not require that choice. In fact, the Metro law does not mandate that Plaintiffs make any particular choice about how to travel within the District or that they incur any associated costs. Plaintiffs' transportation choices are thus not fairly traceable to the Metro law, and any costs incurred to travel in their preferred manner are entirely self-inflicted and cannot serve as the basis for Article III standing. *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) ("No [plaintiff] can be heard to complain about damage inflicted by its own hand.").

Plaintiffs offer no authority compelling a different conclusion. *See* Pls.' Opp'n at 39–42. The most they can do is cite a handful of inapposite decisions involving the economic impact of compliance with targeted regulations that required certain businesses to incur new and additional expenses in carrying out specifically prescribed steps. *See, e.g.*, *Abbott Labs. v. Gardner*, 387 U.S. 136, 154 (1967) (involving a regulation that forced drug companies to change how they labeled products, which "require[d] them to make significant changes in their everyday business practices"); *Metro. Wash. Chapter, Assoc. Builders & Contractors, Inc. v. District of Columbia*, 62 F.4th 567, 573 (D.C. Cir. 2023) (similar, involving hiring-and-reporting requirements for construction companies). However, none of those cases has any bearing where, as here, Plaintiffs are challenging a generally applicable *prohibition* that requires no affirmative conduct, that mandates no new or additional costs, and that leaves lawful gunowners with ample choice about how they wish to travel throughout the District.

Equally misplaced is Plaintiffs' reliance on *Cruz*, which involved a campaign-finance law that barred campaigns from repaying candidates for certain loans. 142 S. Ct. at 1646. *Cruz* reaffirmed the principle that, where, as here, no imminent threat of enforcement exists, plaintiffs cannot "manufacture standing by voluntarily taking costly and burdensome measures," even if they believed such measures "were necessary." *Cruz*, 142 S. Ct. at 1647 (citing *Clapper*, 568 U.S. at 416). That rule simply did not apply on the facts of *Cruz* because, while the plaintiffs there "chose to subject themselves" to the FEC's repayment restrictions, their injuries were "directly inflicted by the FEC's threatened enforcement of the provisions" and they would "face genuine legal penalties if they d[id] not comply." *Id.* Nothing of the sort can be said here: Plaintiffs need not subject themselves to the Metro law at all given the vast array of alternative modes of transportation that remain available to them, many of which cost nothing at all (*e.g.*,

walking, catching a ride with friend). *See Petro-Chem*, 866 F.2d at 438 (finding no standing where plaintiffs "can avoid the threatened injury by choosing" different options).

### II. Plaintiffs' Remaining Claims Against the Individual District Defendants Should Be Dismissed.

Plaintiffs have withdrawn any claim for damages against Defendants Attorney General Schwalb and Chief Contee and now seek only injunctive relief against them. Pls.' Opp'n at 34. But those claims are duplicative, and Plaintiffs offer no response to the District's argument on this point. *See* Defs.' Mot. at 11–14, 19. While Plaintiffs are of course correct that an injunction against a municipal official may be an available remedy under 42 U.S.C. § 1983, *see* Pls.' Opp. at 34, Plaintiffs have not explained why *both* their claims against the District and their duplicative claims against the Individual District Defendants are appropriate in this case. Courts in this jurisdiction regularly dismiss official-capacity claims against District officials as duplicative when the District is also a party. *See*, *e.g.*, *Lopez v. District of Columbia*, 268 F. Supp. 3d 256, 260 (D.D.C. 2017). And this Court should do so here.

### CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss and dismiss Plaintiffs' First Amended Complaint for lack of jurisdiction.

| | |
|---|---|
| Date: May 12, 2023. | Respectfully Submitted, |
| | BRIAN L. SCHWALB<br>Attorney General for the District of Columbia |
| | STEPHANIE E. LITOS<br>Deputy Attorney General<br>Civil Litigation Division |
| | */s/ Matthew R. Blecher*<br>MATTHEW R. BLECHER [1012957]<br>Chief, Civil Litigation Division, Equity Section |

                                     */s/ Helen M. Rave*
                                 ANDREW J. SAINDON [456987]
                                 Senior Assistant Attorney General
                                 MATEYA B. KELLEY [888219451]
                                 RICHARD P. SOBIECKI [500163]
                                 HELEN M. RAVE [90003876]
                                 Assistant Attorneys General
                                 Civil Litigation Division
                                 400 6th Street, NW
                                 Washington, D.C. 20001
                                 Phone: (202) 735-7520
                                 Email: helen.rave@dc.gov

                                 *Counsel for Defendants District of Columbia, Chief Robert J. Contee III, Attorney General Brian Schwalb*